IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRANSPORT INTERNATIONAL POOL, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ALTERNATIVE TRANSPORT, INC. et al. | : | NO. 07-2895 |
| Defendants | : | |

## MEMORANDUM OPINION

**TIMOTHY R. RICE**
**U.S. MAGISTRATE JUDGE**                                              **June 25, 2008**

This case involves an alleged agreement between plaintiff Transport International Pool,

Inc. (TIP) and defendant Riverside Transport, Inc. (RTI) to resolve pending litigation.  I must

determine whether RTI's counsel, Paul D. Sinclair, agreed to settle the case on RTI's behalf, and

if so, whether Sinclair was authorized by his client to do so.  Resolution of these issues depends

on the parties' written communications, and their contemporaneous conduct.

TIP seeks to enforce a settlement agreement it claims it reached with RTI on March 11,

2008.  See Plaintiff's Motion to Enforce Settlement Agreement at Exhibit C, Transp. Int'l Pool,

Inc. v. Alternative Transp., Inc., et al., No. 07-2895 (E.D. Pa. filed May 13, 2008) [hereinafter

Plaintiff's Motion].  It asserts RTI agreed to settlement terms.  RTI and its attorney contend they

never agreed to settle.  For the following reasons, TIP's motion to enforce settlement will be

GRANTED.

**I. Background**

On June 22, 2007, TIP filed this action in the Court of Common Pleas of Chester County

against RTI, Alternative Transport, Inc. (ATI), and William M. Grojean regarding the parties'

tractor trailer transactions.  Grojean is RTI's officer responsible for authorizing all decisions.

See Defendants' Answer to Plaintiff's Motion to Enforce Settlement Agreement at Exhibit A,

Transp. Int'l Pool, Inc. V. Alternate Transp., Inc., et al., No. 07-2895 (E.D. Pa. filed May 27,

2008) [hereinafter Defendants' Answer].  RTI removed the matter to the United States District

Court for the Eastern District of Pennsylvania.  The parties attended a settlement conference on

March 7, 2008 before the Honorable Paul S. Diamond.[1]  Despite negotiations, no resolution was

reached and another settlement conference was scheduled for March 20, 2008.  Following the

March 7, 2008 settlement conference, counsel for the parties exchanged numerous

correspondence.

Following telephone conversations, TIP's counsel, Susan Mangold, sent Sinclair an email

on March 11, 2008 stating "attached please find a document containing the essential terms of the

settlement reached between TIP and RTI."  See Defendants' Answer at Exhibit B.  The attached

document listed the following under the title "Essential Terms of Settlement between TIP and

RTI":

> 1.  TIP will handle AJB units through David Watkins; David
> Watkins to secure the payment for the trailers and TIP will get the
> titles to David Watkins; David Watkins will then take care of
> remitting money and titles to each respective party

---

[1]  The parties consented to appear before me for a bench trial, but Judge Diamond
conducted the settlement conference because I would be the fact finder.

      2. $130,000.00: $55,000.00 by March 25, 2008; $40,000.00 on or before September 25, 2008; $35,000.00 on or before March 25, 2009

      3. $70,000.00: RTI will return the five 2003 Hyundai trailers that are in their fleet within 30 days of the signing of the settlement agreement; if the units are not returned, RTI will pay TIP $14,000.00 for each unreturned unit

      4.  complete dismissal of lawsuit and regarding the [five] 2003 Hyundai trailers identified in #3, above

      5.  TIP assignment to RTI of rights to all units identified in the lawsuit, other than the units sold to AJB

      6. $50,000.00: In exchange for TIP's assignment of its judgment against John and Lorlyn Mosier (to be assigned to a nominee TBD), RTI will pay $50k to TIP at the time RTI collects on assigned judgment or by September 25, 2009, whichever is earlier.

      7.  confidentiality agreement; stipulated judgment in favor of TIP for $180,000.00, less any amounts previously paid

      8.  cooperation clause relative to additional data/information RTI may need to go after Mosier

Id.

On March 13, 2008, Mangold sent Sinclair an email attaching a "draft settlement agreement." Id. at Exhibit C.  Mangold asked Sinclair to have his client sign it and communicate with her colleague regarding "any questions or changes to the agreement." Id.  Additionally, the email stated the document needed to be finalized and signed by March 25, 2008 – the date of the first payment, and Judge Diamond needed to be notified of the settlement to cancel the conference. Id.  Sinclair responded by stating:

      I have numerous changes to this document.  Most of them are not material.  However, the most significant material issue is . . . that RTI is the only party obligated by this agreement . . . . I am

> discussing the changes with Bill Grojean and will have a redraft
> sent to your office tomorrow.

Id. at Exhibit E.  Mangold then agreed the settlement was between only TIP and RTI, and agreed

to dismiss Grojean and ATI.  See Plaintiff's Motion at Exhibit C.

Sinclair sent Mangold an email March 14, 2008 with an attached redraft of the Settlement

Agreement and Release.  See Defendants' Answer at Exhibit F.  His draft included terms not

agreed to on March 11, 2008.  Id.  Mangold did not respond to the new terms added in Sinclair's

March 14, 2008 draft before Sinclair's actions on March 17, 2008.

Nevertheless, on March 17, 2008, Sinclair sent a letter to Judge Diamond stating the

parties are "pleased to advise [him] that the Plaintiff and Defendant in the above captioned case

have reached settlement terms and are currently in the process of documenting those terms."  Id.

at Exhibit G.  The letter noted the exchange of a term sheet and drafts of the agreement.  Id.  He

requested Judge Diamond continue the March 20, 2008 settlement conference to March 27, 2008

to "allow the parties to complete documentation of their settlement," and address any issues the

parties cannot resolve on March 27, 2008.  Id.  Grojean, the client representative, was copied on

the letter via email.  Id.

Sinclair sent Mangold's colleague, Mary-Ellen Allen, an email on March 19, 2008 stating

"I hope we can just conclude our settlement so that we don't have to come to a crunch."  Id. at

Exhibit H.

On March 19, 2008, Judge Diamond dismissed the action with prejudice pursuant to

Local Rule of Civil Procedure 41.1(b).  See Order, Transp. Int'l Pool, Inc. v. Alternative Transp.,

Inc., et al., No. 07-2895 (E.D. Pa. filed Mar. 20, 2008) [hereinafter March 19th Order].  The

order acknowledged the parties' letter informing Judge Diamond that they "have reached settlement terms and are currently in the process of documenting those terms." Id.  The parties were informed they had 90 days to inform Judge Diamond of any "difficulty finalizing the settlement." Id.  The order closed the case.  Id.

An email to Sinclair on March 27, 2008 attached the settlement agreement incorporating RTI's agreed changes and proposed additional changes.  See Defendants' Answer at Exhibit J. The email stated RTI's proposed Exhibit C, which added an assignment of leases to the agreement, was removed because it "was not part of the agreed upon terms." Id.  Sinclair's email response on March 31, 2008 stated he discussed the changes with his client and commented his revisions were because "at the time [he] negotiated this settlement, [he] had only entered [his] appearance approximately two days before, and did not really have command of all the facts." See id. at Exhibit K.  Sinclair discussed Exhibit C's assignment of leases and rents, stating "when [he] was negotiating the agreement, [he] thought that TIP had a judgment" against "ATI-Texas, the company which leased the trailers . . . . Thus, the rights [he] wished to have assigned are still based on the leases." Id.  Grojean was copied on this email.  Id.

On April 8, 2008, Mangold emailed Sinclair stating all aspects of the settlement agreement are agreed upon except Exhibit C, which is "not something that TIP will agree to." Id. at Exhibit L.  Mangold stressed the need to "wrap this up," and to "finalize[]" the settlement agreement "no later than the end of this week." Id.

In a phone call April 10, 2008, Sinclair admitted to Mangold that the "cost of gasoline and diesel had materially changed since March 7, 2008, and that a principal consideration was whether RTI could economically perform such an agreement." See Defendants' Memorandum in

Opposition to Plaintiff's Motion to Enforce Settlement Agreement at ¶ 23, <u>Transp. Int'l Pool,</u>

<u>Inc. v. Alternative Transp., Inc.</u>, No. 07-2895 (E.D. Pa. filed May 27, 2008) [hereinafter

Defendants' Memorandum].  He told Mangold "he thought the parties could reach an agreement,

but that economically this could only occur if TIP would grant RTI a three month postponement

of its monthly lease payments."  <u>Id.</u>

　　　Sinclair emailed Mangold on April 16, 2008, stating he talked to Grojean, Grojean was

considering the discussion, and Sinclair should hear from him soon.  <u>See</u> Plaintiff's Motion at

Exhibit I.  Less than an hour later, Sinclair emailed Mangold stating it was "not clear as to

whether there is a settlement without signing an agreement."  <u>See</u> Defendants' Answer at Exhibit

M.  He added RTI was doing its best "to accomplish what [they could] actually perform.  <u>Id.</u>

There [was] no use promising what cannot be performed."  <u>Id.</u>  Mangold responded by email on

April 17, 2008 contesting Sinclair's denial of a settlement agreement and stating:

> Whether your client's financial position has changed since we
> reached an agreement is irrelevant.  My client will not agree to
> making the signing of the settlement agreement contingent on my
> client agreeing to your client's request for a deferral of lease
> payments on leases that were not the subject of the settlement . . . .
> TIP has no intention of waiting until June 18th to go to Judge
> Diamond if RTI fails to sign the settlement agreement.  We need to
> get this wrapped up ASAP.

<u>Id.</u>

　　　On April 23, 2008, Sinclair sent Mangold a letter denying the existence of a settlement

and discussing the underlying merits of TIP's claims.  <u>See</u> Plaintiff's Motion at Exhibit L.  The

letter stated Sinclair's "client clearly understood that no settlement had been finally concluded,

and we had not asked for his assent to final binding terms.  We simply had an outline for an

agreement." Id.  He stated the court indicated the parties were to notify Judge Diamond if settlement was not complete within 90 days, and therefore, acknowledged the parties had not concluded settlement.  Id.  Sinclair, however, failed to initiate any effort within 90 days to have the court reopen the case.

TIP filed a Motion to Enforce Settlement Agreement on May 13, 2008.  See Plaintiff's Motion.  RTI responded to this motion on May 27, 2008 and included a declaration by Grojean executed on May 23, 2008.  See Defendants' Answer at Exhibit A.  Grojean declared he is the officer of RTI responsible for authorizing all decisions, he understood that "no agreement would be reached until a final agreement was signed," "the discussion and negotiations between counsel were not an agreement and [he] never signed, authorized, or consented to any settlement agreement," he "never granted authority to counsel to conclude any agreement" on RTI's behalf or represented otherwise to TIP, he was "never asked by the parties nor any court personnel to give [his] consent to the terms of any final settlement," he "never signed the essential terms," and the alleged essential terms do not include terms material to him, including who the parties to the settlement were, who would be obligated to pay settlement amounts, and release language.  Id.

The parties jointly requested on June 2, 2008, that I decide this matter based on briefs and accompanying exhibits.  They rejected my invitation conveyed during the June 2, 2008 telephone conference, to present live testimony to resolve any factual disputes.  Compare Garabedian v. Allstates Eng'g Co., 811 F.3d 802, 803 (3d Cir. 1987) (a hearing should be held to determine attorney authorization when it hinges on factual issues and credibility determinations).

## II. Discussion

Strong public policy favors settlements.  Wilson v. Chester County Prison, et al., 1998 WL 669930, at *2 (E.D. Pa. Sept. 28, 1998) (Rueter, J.)  I have jurisdiction to enforce a settlement agreement entered into by parties in a case.  Bershak v. Phila. Gas Works, et al., 2001 WL 193702, at *1 (E.D. Pa. Feb. 26, 2001) (Waldman, J); Rosso v. Foodsales, Inc., 500 F.Supp. 274, 276 (E.D. Pa. 1980) (Weiner, J.).  State law governs whether a settlement occurred, id. (citing Tiernan v. DeVoe, 923 F.2d 1024, 1032-33 (3d Cir. 1991), because the "settlement of a lawsuit and the relationship between an attorney and his or her client are areas traditionally governed by state law and there is no conflicting federal interest," Patterson v. Glaxosmithkline Pharmaceutical Co., et al., 2007 WL 966742, at *4 (E.D. Pa. Mar. 27, 2007) (Surrick, J.) (citing Tiernan, 923 F.2d at 1032-33)).

Pennsylvania law applies because Pennsylvania is the place with the most interest in the dispute.  Bankers Trust Co. v. Bethlehem Steel Corp., 752 F.2d 874, 882 (3d Cir. 1984); Wyndmoor Learning Ctr., et al. v. City of Wilmington, et al., 1996 WL 117471, at *6 (E.D. Pa. Mar. 12, 1996) (Robreno, J.).  The lawsuit was filed in Pennsylvania, a settlement conference was held in Pennsylvania, emails discussing the alleged settlement were received by an attorney in Pennsylvania, and a letter to the court announcing the alleged settlement was received in Pennsylvania.  See Wyndmoor Learning Ctr., 1996 WL 117471, at *6 (Pennsylvania law governs because the settlement negotiations occurred between counsel in Pennsylvania and the settlement agreement was allegedly entered into in Pennsylvania).

Ordinary principles of contract law govern settlement agreements.  In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000); Thomas v. Univ. of Pa., 2007 WL 2891739, at *2

(E.D. Pa. Oct. 2, 2007) (Robreno, J.).  "As with any contract, it is essential to the formation of a settlement agreement that 'the minds of the parties should meet upon all the terms, as well as the subject matter, of the [agreement].'"  Thomas, 2007 WL 2891739, at *2 (quoting Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999)).  An agreement is valid if "the parties mutually assent to the terms and conditions of the settlement."  Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 803 (3d Cir. 1962).

"[A]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."  Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970); Thomas, 2007 WL 2891739, at *2 (quoting Green, 436 F.2d at 390); Suber v. Peterson, 2006 WL 1582312, at *3 (E.D. Pa. June 2, 2006) (McLaughlin, J.) (quoting Green, 436 F.2d at 390).  "A 'settlement agreement is still binding even if . . . a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing.'"  Thomas, 2007 WL 2891739, at *2 (quoting Wyndmoor Learning Ctr., 1996 WL 117471, at *6 (internal quotations and citations omitted)).

An attorney may settle a client's claims if the attorney has express authority from their client.  Covington v. Continental General Tire, Inc., 381 F.3d 216, 221 (3d Cir. 2004); Reutzel v. Douglas, 870 A.2d 787, 792 (Pa. 2005).  There is a rebuttable presumption that a settlement entered into by an attorney was authorized by his client.  Garabedian, 811 F.2d at 803; Suber, 2006 WL 1582312, at *3.  Thus, once Grojean asserted Sinclair was not authorized to settle the case, the burden shifted to TIP to prove Sinclair had express authority.  Patterson, 2007 WL 966742, at *3; Mowrer v. Warner-Lambert Co., 2000 WL 974394, at *5 n.8 (E.D. Pa. July 13,

2000) (Robreno, J.).  Typical cases finding express authority include where the client "delayed in asserting the lack of authority, or where it is clear the real motive for challenging a settlement involve[d] a change of heart."  Farris v. JC Penney Co., Inc., 176 F.3d 706, 713 (3d Cir. 1999).  Additionally, a client may ratify counsel's actions when he learned a settlement was reached and took no action to repudiate counsel's authority to settle.  Piluso v. Cohen, 764 549, 551 (Pa. Super. 2000).

When the determination whether an attorney was authorized to settle a case hinges on factual issues and credibility determinations, a hearing should be held.  Garabedian, 811 F.2d at 803; Suber, 2006, 1582312, at *3.  However, during a June 2, 2008 telephone conference, the parties waived a hearing and jointly requested a ruling from the written record.  Additionally, the existence of a settlement in this case depends mainly on a factual dispute documented in written communications.  Although an evidentiary hearing would be preferable, the parties agree the relevant exhibits provide a sufficient record to resolve the dispute.  I find the parties settled the case and the March 11, 2008 agreement enforceable.

First, Sinclair agreed to the settlement between TIP and RTI.  Mangold sent Sinclair an email on March 11, 2008 with the essential terms of the settlement reached between TIP and RTI.  Sinclair not only failed to deny the terms as those agreed to, but thereafter referenced the parties' exchange as a "settlement."  The parties entered into an agreement because the parties understood and mutually assented to the terms of the settlement agreement.  Main Line Theatres, Inc., 298 F.2d at 803.  An agreement voluntarily entered into is binding on TIP and RTI, despite not being made in court and not confirmed in writing.  Green, 436 F.2d at 390; Thomas, 2007 WL 2891739, at *2; Suber, 2006 WL 1582312, at *3.  Thus, Mangold's statements regarding the

-10-

need to "wrap up" the document and get it signed are irrelevant to whether a settlement was reached.

Sinclair's behavior and future correspondence with Mangold and the court support the acceptance of the agreement. Sinclair represented to Judge Diamond that TIP and RTI "reached settlement terms and [were] currently in the process of documenting those terms." See Defendants' Answer at Exhibit G. It is illogical that an attorney would send a letter to the court stating settlement terms were reached if settlement terms were merely being negotiated. Additionally, Sinclair wrote the following statements regarding the existence of a settlement in the letter to the court and email correspondence with Mangold: a continuation would "allow the parties to complete documentation of their settlement," id.; "I hope we can just conclude our settlement," id. at Exhibit H; "at the time I negotiated this settlement," id. at Exhibit K; and "when I was negotiating the agreement," id. Sinclair's statements fail to support RTI's argument settlement was conditioned on signing the agreement.

The first time Sinclair's language in the written documents suggested a settlement agreement was not reached was on April 16, 2008 – more than a month after assenting to the settlement. He stated it "is not clear as to whether there is a settlement without signing an agreement." Id. at Exhibit M. As a threshold matter, this view misstates the law. See Green, 436 F.2d at 390. Moreover, during an April 10, 2008 telephone call, Sinclair admitted the cost increases for gasoline and diesel affects RTI's ability to perform an agreement, and states RTI could economically perform an agreement "if TIP would grant RTI a three month postponement of its monthly lease payments," see Defendants' Memorandum at ¶ 23, and in the April 16th email he denied the settlement stating "there is no use promising what cannot be performed," see

Defendants' Answer at Exhibit M.  RTI's references to its changed economic situation establishes a change of heart.  The agreement is binding even if RTI "had a change of heart between the time [it] agreed to the terms of the settlement and when those terms were reduced to writing." Thomas, 2007 WL 2891739, at *2.  Thus, RTI's desire to change or add terms to the agreement, or a change in RTI's economic ability to perform the agreement, does not alter its obligation to honor its word. See id.  Sinclair's reference to the cost of fuel, RTI's fiscal condition, and the request to postpone unrelated lease payments, establish the true motivation for RTI's modified position and establishes by a preponderance of the evidence that Sinclair possessed express authority on March 11, 2008 to settle the case.

Moreover, the material disputes RTI claims still exist, will not prevent settlement enforcement.  In response to Mangold's draft, Sinclair stated the "most significant material issue" was that RTI be "the only party obligated by this agreement," and listed no other material issues in the email. See Defendants' Answer at Exhibit E.  TIP agreed to accommodate this request. See Plaintiff's Motion at Exhibit C.  The issue regarding assignment of leases occurred after RTI and TIP agreed on settlement terms, which Sinclair acknowledged in an email stating "when [he] was negotiating the agreement, [he] thought that TIP had a judgment" against "ATI-Texas, the company which leased the trailers . . . . Thus, the rights [he] wished to have assigned are still based on the leases." See Defendants' Answer at Exhibit K; Capital Controls Co., Inc. v. Aetna Cas. & Sur. Co., 1989 WL 167396, at *2 (E.D. Pa. Aug. 2, 1989) (Waldman, J.) (problem with settlement did not arise until after the agreement so it appears the plaintiff had a change of heart, which will not invalidate the settlement).  In any event, RTI does not address TIP's claim that RTI does not need an assignment of leases because the agreement includes the titles for RTI to

pursue a replevin action.  Additionally, despite claiming the release and application of

Pennsylvania law are material issues, RTI fails to establish what dispute, if any, exists with the

release language or to explain its preference for the application of another state's laws.  See Swift

v. Baskin, 1995 WL 296273, at *9 (E.D. Pa. May 15, 1995) (DuBois,  J.) (citing Kazanjian v.

New England Petroleum Corp., 480 A.2d 1153, 1157-58 (Pa. Super. 1984)) (tender of a release

does not reopen the agreement or make its execution a condition to the settlement).  Instead, I

find RTI is attempting to manufacture material disputes to avoid complying with the agreed

settlement because gas and diesel price increases affected its economic ability to comply with its

agreement.  Such a change in heart because of economic circumstances cannot invalidate the

parties' agreement.  See Thomas, 2007 WL 2891739, at *2.[2]

---

[2]  RTI claims Mazzella v. Koken, 739 A.2d 532 (Pa. 1999), supports TIP and RTI did not
enter into a settlement because like Mazzella, the drafts revealed material issues existed with the
agreement.  See Defendants' Memorandum at 9-10.  Mazzella is distinguishable.  In Mazzella,
the parties appeared to initially reach an agreement and notified the court.  739 A.2d at 533.  The
terms included distributing any surplus in the estate's assets to Mazzella, and distributing the
assets "within a time-certain following resolution of" another matter.  Id. at 533.  The exchange
of drafts, however, revealed a meeting of the minds did not occur because the parties could not
agree on the details of the agreed terms, i.e., how the assets would be determined or the exact
"time-certain" for the distribution.  Id. at 533-34.  Unlike Mazzella, RTI does not claim a
material dispute exists with the eight agreed terms of March 11, 2008, but with terms added in
the drafts.   The latter change of heart to include more terms will not invalidate the settlement.
See Capital Controls Co., Inc., 1989 WL 167396, at *2; Thomas, 2007 WL 2891739, at *2.

RTI also alleges enforcement of the settlement fails due to the statute of frauds under
Pennsylvania's Commercial Code, 13 Pa. Cons. Stat. § 2201.  See Defendants' Memorandum at
12.  Section 2201 states "a contract for the sale of goods for the price of $500 or more is not
enforceable by way or action or defense unless there is some writing sufficient to indicate that a
contract for sale has been made between the parties and signed by the party against whom
enforcement is sought."  13 Pa. Cons. Stat. § 2201.  The statute of frauds applies to settlement
agreements.  See Gogel v. Blazofsky, 142 A.2d 313, 315-16 (Pa. Super. Ct. 1958).  RTI alleges
the statute of frauds applies because of the provision for the sale of goods, i.e. the trailers, over
$500.  See Defendants' Memorandum at 12.  Regardless whether the statute of frauds applies to
this settlement agreement, RTI has not contested any provision involving the sale of the trailers.

Second, Sinclair had express authority from his client to settle this case.  See Covington, 381 F.3d at 221.  Grojean stated in his declaration he was responsible for authorizing all decisions, including settlement, but now claims he never authorized an agreement, or authorized counsel to conclude any agreement on RTI's behalf.  See Defendants' Answer at Exhibit A.  Grojean's conduct since March suggests otherwise.  Direct independent and contemporaneous evidence of express authority will rarely exist, and thus, I must view the surrounding circumstances, which support express authority existed.  Correspondence between Mangold and Sinclair establish Sinclair had express authority to negotiate the settlement, id. at Exhibit E; Plaintiff's Motion at Exhibit I, and the level of detail in the agreed eight-point term sheet establishes Sinclair, considering he had only recently entered his appearance at the time, received explicit directions from his client on how to settle the case.  Additionally, the record supports Grojean's knowledge Sinclair had settled the case.  Grojean was copied on, or received notice of, the following written documents, which referenced the agreed settlement: the letter to Judge Diamond on March 17, 2008; Judge Diamond's March 19, 2008 order; and Sinclair's March 31, 2008 email referencing when he negotiated the settlement.  See Defendants' Answer at Exhibits G, K; March 19th Order.  This record establishes Grojean knew of the settlement and had numerous opportunities to object to Sinclair's settlement of the case as unauthorized.  See Mowrer, 2000 WL 974394, at *7 n.13 ("A principal may promptly repudiate an agent's actions."); Piluso, 764 A.2d at 551.  It is illogical that Sinclair would inform the court settlement

---

See id.  The purpose of the statute of frauds is to prevent parties from escaping legal obligations, "not to create a loophole of escape."  Standard Steel, LLC, v. Buckeye Energy, Inc., 2005 WL 24033636, at *12 (W.D. Pa. Sept. 29, 2005).  Thus, RTI's statute of frauds defense fails.

terms were reached without express authority, and that Grojean would not promptly repudiate Sinclair's authority to settle the case when he received these documents if no express authority existed.  Grojean never notified Judge Diamond that Sinclair was not authorized to settle the case or attempted to reopen the dismissed case.  Instead, TIP moved on May 13, 2008 to enforce the agreement.  This distinction is significant because it establishes Grojean failed to timely assert his May 23, 2008 declaration that the entered settlement was unauthorized.

Instead, the delay in asserting Sinclair's lack of authorization establishes RTI's effort to renegotiate to add terms and address its apparently deteriorating financial circumstances due to gas and diesel price increases.  These real motives support a change of heart, which will not alter RTI's obligation under the agreed terms of March 11, 2008.  See Farris, 176 F.3d at 713; Thomas, 2007 WL 2891739, at *2.  Thus, the settlement agreement, entered into by duly authorized counsel, expressed the intention to settle the case on the agreed terms, and was valid and binding despite the absence of any writing.  See Good v. Pa. Railroad Co., 384 F.2d 989, 990 (3d Cir. 1967) (citing Main Line Theatres, Inc., 298 F.2d at 801).  The March 11, 2008 terms shall be enforced.

An appropriate order follows.